IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION

| | |
|---|---|
| SANTOS HERNANDEZ-NICOLAS, et al., and all others similarly situated, | : : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION NO. 6:04-CV-10 |
| GEORGIA GROWERS ASSOC., INC., et al., | : : : |
| Defendants. | : : |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION OF A COLLECTIVE ACTION**

Plaintiffs moved to certify two separate FLSA minimum wage collective actions, one on Count I for the first week of each contract and one on Count II, for violations in later workweeks due to hours shorting. In support, Plaintiffs have provided 5 new affidavits, 13 previously-submitted affidavits, testimony from the preliminary injunction hearing, and four FLSA opt-in consent forms in support of their motion. Defendants' brief focuses on arguments that go to the merits of Plaintiffs' claims or to potential defenses– both inappropriate bases for denial of Plaintiffs' motion. Defendants fail, however, to discuss the requirements for certification under § 216: (1) fellow workers have expressed a desire to opt-in, and (2) the proposed class members are similarly situated.  Plaintiffs have shown both.

**A.      Plaintiffs Amply Satisfy the "Flexible" and "Lenient" Showing Required for Collective Action Certification Under 29 U.S.C. § 216(b)**

The required showing for conditional certification of a FLSA collective action under 29 U.S.C. § 216(b) is "flexible" and "lenient." Hipp v. Liberty, 252 F.3d 1208, 1217-19 (11th Cir. 2001); Grayson v. K-Mart, 79 F.3d 1086, 1095-96 (11th Cir. 1996). The Court must determine only "that

there are other employees of the [employer] who desire to 'opt-in' and who are 'similarly situated' with respect to their pay provisions." Dybach v. Florida, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Defendants' citation of inapposite and out-of-circuit law notwithstanding,[1] Plaintiffs amply meet the Eleventh Circuit's standard for conditional collective action certification.

1. <u>Plaintiffs' Four Consent-to-Sue Forms Demonstrate that Others Want to Opt-In.</u>

The Plaintiffs have presented consent-to-sue forms from four other workers at Gibbs Patrick Farms: Florencio Hipolito-Rivera, Fidencio Hernandez-Hernandez, Valente Serrano-Martinez, and

---

[1] Defendants rely on inapposite and out-of-circuit cases to oppose Plaintiffs' motion. All of these cases deal with collective actions involving huge proposed classes of workers, workplaces scattered over a large geographic area, and highly diverse employer practices that vary from location to location. Holt v. Rite Aid, 2004 U.S. Dist. LEXIS 17241 at *2 (M.D. Ala. 2004)(proposed nationwide class of all store managers and assistant managers at national drug store chain); Basco v. Wal-Mart, 2004 U.S. Dist. LEXIS 12441 at *1-2 (E.D. La. 2004)(proposed class of an estimated 100,000 hourly workers across the state); McElmurry v. U.S. Bank, 2004 U.S. Dist. LEXIS 15233 at *29 (D. Or. 2004)(proposed nationwide class of sales and service managers employed by nationwide bank chain where various branches followed different time recording practices); Madrid v. Minolta, 2002 U.S. Dist. LEXIS 18539 at *5-7 (S.D.N.Y. 2002) (proposed class of all customer technicians at 41 branches nationwide; sole support for similarly situated claim was one affidavit from an employee who was not a technician). Two of these cases specifically deal with an issue, not present in the instant case, that requires more individualized analysis: whether employees primarily spend their time on managerial activities and are therefore exempt from FLSA overtime coverage. Holt, 2004 U.S. Dist. LEXIS 17241 at *9-19; McElmurry, 2004 U.S. Dist. LEXIS 15233 at *11-20. In addition, three of these cases plainly conflict with Eleventh Circuit precedent by holding that a unified policy or practice affecting all members of the putative class must be identified if class members are to be considered similarly situated. McElmurry, 2004 U.S. Dist. LEXIS 15233 at *46 ("Plaintiffs fail to show a single course of action binding the putative class together."); Basco, 2004 U.S. Dist. LEXIS 12441 at *25 (finding collective certification inappropriate "because there is no single decision, policy or plan"); Madrid, 2002 U.S. Dist. LEXIS 18539 at *8 ("there has been no showing that defendant has a policy or practice which deprives its technicians of appropriate overtime compensation."); contra Grayson, 79 F.3d at 1095 ("We also hold that a unified policy, plan, or scheme of discrimination *may not* be required to satisfy the more liberal 'similarly situated' standard of § 216(b)."(emphasis added)). In the instant case, however, Plaintiffs have alleged a common practice of hours-shorting that affected all H-2A employees at a specific, single worksite: Gibbs Patrick Farms. The cases cited by Defendants, even if consistent with Eleventh Circuit precedent, thus fail utterly to apply to the facts at hand.

Wenceslao Hernandez-Rubio.[2] See Consents-to-Sue, attached as Ex. 4.  These forms provide more than sufficient proof of the existence of additional employees who desire to opt-in to this suit.[3] See, e.g., White v. Osmose, 204 F.Supp.2d 1309, 1316 (M.D. Ala. 2002) (conditional certification granted in case with 1 plaintiff and 3 opt-ins).

2.  Members of the Proposed Class Are Similarly Situated to Plaintiffs Because They All Worked Under the Same H-2A Job Orders at a Single Farm in Georgia

To show that they are similarly situated, Plaintiffs need not show identical job positions and duties. Bradford v. Bed, Bath, & Beyond, 184 F. Supp. 2d 1342, 1347 (N.D. Ga. 2002). A showing that the putative class members' job positions and duties are merely similar suffices. Hipp, 252 F.3d at 1217; Grayson, 79 F.3d at 1096. Plaintiffs' showing surpasses the Eleventh Circuit's lenient standard for similarity.  Plaintiffs can show that all putative class members had identical job titles and a limited number of job responsibilities. Hipp, 252 F.3d at 1219; Grayson, 79 F.3d at 1098. Every job order filed by Defendants in 2001, 2002, and 2003 labeled their H-2A employees by the exact same job title: "Farmworker Diversified." See Ex. B, C, D, E, F, G, and H, attached to original Cmplt. Moreover, Defendants' job orders consistently describe the same tasks for all putative class

---

[2] Defendants concede that there are "Plaintiffs and three consents-to-sue from Mexico[.]" Opp. at 20. They dispute, however, that there is "a similarly situated class of others who desire to opt-in." Id. Plaintiffs do not have to show that the entire class of workers desires to opt-in. Undoubtedly, workers fear retaliation and some will align themselves with Defendants, as Defendants' Affiants have done.

[3] Plaintiffs recently moved to amend their complaint to join their four opt-ins as party-plaintiffs. This is consistent with ensuring the opt-ins' rights to participate in this suit. It is not uncommon for counsel in a collective motion to act cautiously by both amending their complaint and moving for collective action certification. Basco, 2004 U.S. Dist. LEXIS 4655, *12 (prior to hearing on collective action issue, court granted plaintiffs' motion to amend to complaint to add opt-ins as party plaintiffs); Holt, 2004 U.S. Dist. LEXIS 17241, *9 (plaintiffs' addition of opt-ins to suit as party-plaintiffs did not detract from ability to show, for the purposes of § 216(b) certification, "that other persons desire to join in the suit.") The filed consent-to-sue forms retain their purpose of demonstrating that similarly situated workers wish to join this suit.

members without differentiation among workers. Id.

Even if members of the putative class performed different duties within this list at different times and with different crewleaders, the work performed more than meets the threshold for similarity.[4] All of the tasks described are those of a "diversified" farm laborer, one whose job it is to plant, tend, and harvest the Defendants' crops. This creates "enough of a factual nexus" to justify preliminary certification of a collective action under § 216(b). Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 94-97 (S.D.N.Y. 2003) (certifying collective action for group of market workers in the meat, produce, dairy, frozen foods, bakery, grocery, deli, and front end departments who "had as their primary duties 'production/sales work' rather than management functions"); Bradford, 184 F.Supp.2d at 1346-47 (upholding certification for class of "department managers" who performed different duties in Defendant's stores). Defendants' rigid view of the similarly-situated requirement runs counter to the weight of case law on collective and class actions involving farmworkers' wage claims. E.g. De Luna-Guerrero v. North Carolina Growers Ass'n, No. 4:02-CV-173-H(4) at 9-10 (E.D.N.C. Sept. 30, 2004), attached as Ex. 5 (finding similarly situated all H-2A workers at North Carolina Growers Association member farms over 3 years); Duque-Tovar, 1:03-CV-128-2 (WLS)  at 8 (certifying class of farmworkers at 15 former and current Georgia Growers Association member farms); Medrano v. D'Arrigo Bros., 2004 U.S. Dist. LEXIS 19114, *8 (N.D. Cal.2004)(class of farmworkers alleged they were not paid for all hours worked over 4 years).

Defendants contend that a collective action may not be certified because "individualized

---

[4] That putative class members lived in separate labor camps on Gibbs Patrick Farm does not make them dissimilar for the purposes of § 216(b). The Eleventh Circuit has held that thousands of workers distributed among numerous, widely dispersed worksites are similarly situated. Hipp, 252 F.3d at 1219. Here, Defendants' labor camps are located just outside Omega, as close as one mile apart and all within a 4-mile radius of each other. Defendants' labor force can hardly be characterized as far-flung and dissimilar due to different living quarters.

review of the daily activities of each worker would be required" to determine their FLSA liability. Opp. at 19. The Eleventh Circuit has already rejected Defendants' reasoning. Alleged violations need not be identical in nature and magnitude for certification to take place. Hipp, 252 F.3d at 1219. That minimum wage violations in an agricultural setting occurred at different times, involved different farm labor activities, or led to different claim values does not make class members dissimilar. See, e.g., De Luna-Guerrero, No. 4:02-CV-173-H(4) at 3-4, 7-10 (Ex. 5); Medrano, 2004 U.S. Dist. LEXIS 19114 at *1-2 (class action for hours-shorting for farmworkers employed in "planting, harvesting, grading, packaging, packing, and processing vegetables" at various points during the years 1996-2000); Wales, 192 F.Supp. 2d at 1272 (collective and class action for approximately 2,800 pickers employed under various crewleaders in citrus harvests over 4 years).

Plaintiffs and their opt-ins have specifically described similar reimbursement and hours-shorting practices that applied to themselves and their co-workers[5]. Cmplt ¶¶ 1-5; Campos-Medina Aff. ¶¶10-17, 61; Sec. Campos-Medina Aff. ¶¶8-28; Hdz-Rubio Aff.¶¶19-25; S. Hdz-Nicolas Aff. ¶¶7-10, 52; Sec. S. Hdz-Nicolas Aff. ¶¶ 6-16, 25; E. Hdz.-Hdz. Aff. ¶¶5-10; Quiroz-Salazar Aff. ¶¶9-13; Espinoza-Hdz.¶¶5-10; Martinez-Serrano Aff. ¶¶4-13; Hipolito-Rivera Aff. ¶¶5-6; F. Hdz-Hdz. Aff. ¶¶6; Hdz.-Antonio Aff. ¶¶5-8. In particular, Plaintiffs have repeatedly alleged that, as a result of conversations with co-workers and their personal viewing of co-workers' pay stubs, they knew that they and their co-workers were being cheated. Campos-Medina Aff. ¶¶ 12-17; Sec. Campos-Medina Aff. ¶¶ 5-14, 20,23, 28; Hdz-Rubio Aff.¶¶ 21-25; S. Hdz-Nicolas Aff. ¶¶10, 15-20;

---

[5] Defendants' incredible assertion that "unsupported allegations of Plaintiffs' counsel are all that is present here" reflects willful blindness to the evidence presented. Plaintiffs have testified at a preliminary injunction hearing in open court and have submitted two rounds of affidavits detailing their allegations. A third set of affidavits is submitted in support of this reply. See Exhibits 6 - 8.

Sec. S. Hdz-Nicolas Aff. ¶¶ 6-15; E. Hdz.-Hdz. Aff. ¶¶7-10; Martinez-Serrano Aff. ¶¶10-13.[6]

Defendants would have Plaintiffs' fellow H-2A farm laborers found dissimilar despite the overwhelming similarities among these workers. Everyone in Plaintiffs' proposed class worked for a single farm, Gibbs Patrick Farms, located in Tift County, Georgia. Everyone had the same boss who directed and oversaw their daily activities: James "Gibbs" Patrick, the owner of Gibbs Patrick Farms. In the farm's single office, all the workers' paychecks were calculated and prepared. Workers' unlawfully low paychecks issued from the same computer program and office. In light of these facts, Plaintiffs easily meet their burden for certification under § 216(b).

**B.     Defendants' Inappropriately Raise Defenses and the Merits of the Underlying Suit.**

At this stage, the Court should consider only whether Plaintiffs and the workers they seek to represent are similarly situated.[7] Defendants contest the merits of Plaintiffs' suit and attach a parade of nearly-identical affidavits swearing that nothing is wrong at Gibbs Patrick Farms. Defendants persist in arguing mathematics and the merits of defenses to FLSA liability, despite the fact that courts have repeatedly held that the merits of parties' claims and defenses should not be decided at

---

[6] Two of Defendants' own affiants have previously expressed to Plaintiffs that they had misgivings regarding the accuracy of their own paystubs. For instance, Evodio Ramirez Sanchez spoke with Plaintiff Santos Hernandez-Nicolas and Opt-In Plaintiff Wenceslao Hernandez-Rubio on numerous occasions about hours missing from his paystubs. Ex. 6 ¶6; Ex. 7 ¶¶7-8. Similarly, Defendants' Affiant Enrique Dominguez Martinez expressed concerns to Plaintiff Campos-Medina about the accuracy of his pay. Ex. 8 ¶6.

[7] Defendants also erroneously suggest to the Court that a preliminary certification is wasteful because "no representative class action has ever survived second stage review." Opp. at 2. Defendants' brief quotes Hipp's citation of a 1995 collective action case. Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995)). Since 1995 there have been a number of published decisions approving collective actions at the second stage of review. See, e.g., Bradford, 184 F.Supp.2d 1342 (N.D.Ga. 2002) (denying motion to decertify); Scott v. Aetna Services, Inc., 210 F.R.D. 261, 265 (D.Conn. 2002) (same); Cowan v. Treetop Enters., 163 F. Supp. 2d 930, 932 (M.D. Tenn. 2001) (motion to decertify was denied); Moss v. Crawford & Co., 201 F.R.D. 398, 411 (W.D. Pa. 2000) (same).

the collective action certification stage. Gjurovich, 282 F. Supp. 2d at 105 ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated"); Bradford, 184 F.Supp. 2d at 1345 ('The only determinative issue is whether Plaintiffs' job duties were similar."); Goldman v. RadioShack, 2003 U.S. Dist. LEXIS 7611 at *24 (E.D. Pa. Apr. 17, 2003) ("We will not consider the . . . merits at this stage because only a motion for conditional certification is presently before us.")

1. <u>Plaintiffs' Burden is that of Substantial Allegations, Not Proof.</u>

Defendants misunderstand Plaintiffs' burden when they suggest it is one of "proof." Opp. at 8, 10, 14, 15, 17. Plaintiffs "may meet th[eir] burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 406-07 (D. N.J. 1988), aff'd 862 F.2d 439 (3d Cir.), aff'd 493 U.S. 165 (1989). Plaintiffs meet this burden by making detailed allegations in their complaint and the numerous affidavits submitted in support of their claims.

2. <u>Basic Math Shows Colorable FLSA Minimum Wage Claims.</u>

Defendants argue that violation of the minimum wage is mathematically impossible. This argument is plainly wrong. Because plaintiffs and other workers were shorted a substantial number of hours, minimum wage violations were both possible and inevitable. Even when Defendants' dollar estimates are used in combination with the expense receipts in Plaintiffs' possession, the math shows they failed to pay the minimum wage in the first workweek of 2003, the year Defendants argue they complied.[8] Plaintiff Santos Hernandez-Nicolas was owed reimbursement in 2003 for, at a

---

[8] Defendants assert "substantial, if not entire, . . . reimbursements" arguing that payment of FLSA minimum wages "as soon as practicable" is sufficient. Opp. at 3 and 12 fn. 1 (citing to 29 C.F.R. 778.106 which relates to overtime, not minimum wages). The FLSA minimum wage

minimum, the Banamex fee, the visa fee, a processing fee to Ricardo Rodriguez, a border crossing fee, and transportation. These sources show at least $396 in costs necessary to work for Defendants under the H-2A visa program. Ex. 9. The minimum wages owed Plaintiff Santos Hernandez-Nicolas in his first week of 2003 were $567.24 ($396 in reimbursable expenses plus wages of $171.24 (33.25 hours @ $5.15/hr.)). Ex. 9. Even in 2003, Defendants' payment to Plaintiff Hernandez-Nicolas in his first workweek was at least $72.70 <u>below</u> the minimum wage.

Plaintiffs' second FLSA claim (Count II) asserts that they were not paid an average of the applicable minimum wage for all hours worked because the hours on their paystubs are substantially lower than their actual hours worked. This hotly disputed factual issue must be decided <u>after</u> Plaintiffs have been able to fully examine Defendants' pay records in discovery. Nonetheless, Plaintiffs have a colorable claim of FLSA violations. For example, in the pay period ending 8/20/2003, Plaintiff Mariano Hernandez-Nicolas's paystub shows 20.50 hours and $144.17 in pay. More than 10 additional hours were recorded for hourly employee Urbano, despite his testimony that at most he works 40 minutes more per day than field workers. P.I. Trans. at 163:15-17 (confirming Decl. of Urbano Hernandez-Nicolas at ¶ 7 (10 minutes in morning, 15 to 30 minutes in evening)). That pay period, Defendants' payment to Plaintiff Mariano Hernandez-Nicolas was $11.21 <u>below</u> the minimum wage.  Ex. 10.

---

sets a bare minimum. Nothing less than full compliance is acceptable. <u>Olson v. Superior Pontiac-GMC, Inc.</u>, 765 F.2d 1570, 1579 (11th Cir. 1985) ("the employee must *actually receive* the minimum wage each pay period," emphasis original), <u>modified</u>, 776 F.2d 265 (11th Cir. 1985). Defendants leave unchallenged Plaintiff Campos-Medina's claim that he was not timely reimbursed. Opp. at 12, fn.1. Plaintiff Campos-Medina also testifies that others who arrived when he did were also not timely reimbursed. Sec. Aff. of Campos-Medina (Ex. 2 to Pls.' Mot.) at ¶ 28. Plaintiffs clearly have a colorable claim that Campos-Medina and others were not paid in compliance with the FLSA in 2003.

| Mariano Hernandez-Nicolas | 20.50 hours (5 days) | $144.17 total earnings |
|---|---|---|
| Urbano Hernandez-Nicolas | 33.50 hours (5 days) | |
| Reconstructed hours for Mariano Hdz-Nicolas | 33.50 - (40 min x 5 days) = 30.17 [9] | 30.17 x $5.15 = $155.38 minimum wages owed |
| Unpaid Minimum Wages | **$11.21** | $144.17 -$155.38 |

Similarly, Plaintiff J. Ramon Gomez-Guzman's paystub for the period ending 5/14/2003 shows 35.5 hours and $244.53 in total pay. See Ex. 10. Urbano Hernandez-Nicolas' paystub reports 65.5 hours. Id. That pay period, Defendants' payment to Plaintiff Gomez-Guzman was $72.20 below the minimum wage. Ex.10 ($244.53 - $316.73 [61.5 @ $5.15]).

3.   A Statute of Limitations Defense Should Not Be Decided at This Early Stage.

The appropriate statute of limitations is not properly considered at collective action certification because it is an issue of fact. As such, courts generally permit expansive collective notice and later determine whether some opt-ins claims are time-barred. Camp v. Progressive, 2002 U.S. Dist. LEXIS 21903,*19-20 (E.D. La. Nov. 8, 2002)("At this early stage, the court will require that potential plaintiffs be provided with as much information and leeway to opt in as possible"); Realite v. Ark Restaurants, 7 F.Supp.2d 303, 308 n.4 (S.D.N.Y. 1998)(applying the longest possible statute of limitations for notice and class certification); Goldman, 2003 U.S. Dist. LEXIS 7611, at *28 n.6.

4.   The Existence of Two Collective Actions Against the Same Employer is No Defense.

Defendants claim that this suit should not be certified because there is a separate FLSA suit recently certified as a collective action against Defendant Gibbs Patrick Farms, Inc. Opp. at 2-3; see generally Duque-Tovar, Civ. Act No. 1:03-CV-128-2 (WLS) (M.D. Ga.). Defendants' "Improper

---

[9] These are most likely not the full amount of compensable hours worked, however, as Urbano Hernandez-Nicolas also testified that travel time between fields is not compensated. P.I. Trans. 179:3-6.

Multiplicity of Identical Claims" argument is made without legal citation– perhaps because the only cases on-point do not support Defendants' argument. See, e.g., Yates v. Wal-Mart, 58 F.Supp.2d 1217, 1218-19 (D.Colo. 1999) (rejecting argument that "a Court should decline to grant class certification when another court has certified a class encompassing the same individuals" and certifying second collective action). The two suits are opt-in, not opt-out classes, so one does not preclude the second. And here, unlike in Yates, the relief, claims and defendants in this suit differ from those in the Duque-Tovar suit.[10] Goldman, 2003 US Dist. LEXIS 7611, *22-23 ("Creating two overlapping opt-out classes would create conflict. This is not the present situation.")

5.   Defendants' Good Faith Defense Is Improperly Raised At this Stage and Lacks Merit.

Defendants err when they claim that the DOL letters' "policy statement here is a flat rule upon which an employer can clearly rely in good faith[.]" Opp at 6. The only court to have considered the letters upon which Defendants seek to rely has held that "reliance on these letters is misplaced." De Luna-Guerrero (Ex. 5). The De Luna-Guerrero Court further held that another letter not mentioned by Defendants "warned of an individual workers' right to file suit[.]" Id at 20. Moreover, as long ago as February 2000 (a year before the FLSA claims involved in this suit), Defendants' counsel was railing against "Baseless Mexican Passport, Travel and Visa Allegations Beyond the Coverage and Jurisdiction of the FLSA" in a separate suit before this Court representing Defendant Georgia Growers. Opp. to Rep. Act in Rivera-Garay v. Southern Valley Fruit & Vegetable, Inc., at 6 (attached as Ex. 11). Clearly Defendants and their counsel have known for a long time about the FLSA's possible application to passport, travel and visa expenses.

---

[10] Plaintiffs are asking the court to certify two collective actions based on Count I and Count II. Count II alleges weekly hours-shorting a claim not part of the Duque-Tovar lawsuit.

## CONCLUSION

For the reasons described above, and in Plaintiffs' Brief in Support, this Court should grant Plaintiffs' Motion for Certification of FLSA collective actions on Counts I and II, authorize notice, and order Defendants to produce the names and addresses of the potential class members.

    Respectfully submitted,

    s/ Brian Spears
    Brian Spears
    Georgia Bar No. 670112
    1126 Ponce de Leon Avenue
    Atlanta, Georgia 30306
    404-872-7086

    Mary Bauer
    Rhonda Brownstein
    Kelley M. Bruner
    SOUTHERN POVERTY LAW CENTER
    400 Washington Avenue
    Montgomery, Alabama 36104
    334-956-8200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have on this twelfth day of October 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patricia Griffith, Ford & Harrison LLP (Atlanta, Ga). I also served a true and accurate copy of the attached Plaintiffs' Reply Brief and accompanying exhibits upon the following individuals indicated below by depositing the same in the United States Mail, with adequate postage affixed thereto and properly addressed as follows:

Robert Hall
Ford & Harrison, LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, FL 33602

                                            s/ Brian Spears
                                            Counsel for Plaintiffs